**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

THE KAY COMPANY, LLC, et al.,

                Plaintiffs,

v.                                   CIVIL ACTION NO.  2:10-cv-00410

UNITED STATES OF AMERICA,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Amended Motion for Temporary Restraining Order and for Injunctive and Declaratory Relief [Docket 13].  For the reasons set forth below, this motion is **GRANTED**.

*I.  BACKGROUND AND PROCEDURAL HISTORY*

This action arises out of an allegedly illegal tax assessment by the Internal Revenue Service ("IRS") against Plaintiffs.  Plaintiffs include the Kay Company, LLC ("the LLC") and members of the LLC.  The members of the LLC, along with others, were shareholders of The Kay Company, a separate corporate entity.  According to Plaintiffs, in October 2000, The Kay Company transferred the ownership interests of some of its assets, coal properties, to the LLC.  Subsequently, shareholders of The Kay Company redeemed a portion of their stock in return for ownership interests in the LLC.  This was a way for The Kay Company to transfer interest in the coal properties.  After this transaction, The Kay Company still had some assets, marketable securities,

managed separately from the LLC, and did not own any part of the LLC.  Then, on October 26,

2000, a third party, the First Union National Bank, bought the remaining stock of The Kay Company

as trustee of CMD Statutory Trust ("the Trust").  The new owners of The Kay Company changed

the name to CMD Company ("CMD").  CMD then sold the remaining marketable securities to the

Trust.  This sale resulted in the tax liability that the IRS is now seeking to obtain from the LLC,

which is the subject of this action.  Plaintiffs maintain that they are not responsible for the tax

liability at issue.  The Government insists that the shareholders of The Kay Company engaged in

an abusive tax shelter and avoided corporate tax liabilities when they participated in the transactions

described above.

On March 12, 2001, CMD filed the tax return applicable to the time period where the alleged

liability arose.  Plaintiffs argue that the Government had three years from this date to make an

assessment against CMD.  A notice of deficiency was not sent to CMD until March 5, 2007; the

assessment against CMD was made on August 3, 2007.  The Government insists that the applicable

statute of limitations period was six years, the statute was tolled for a period of time, and that it acted

within the proper time frame.

Plaintiffs allege that in June 2008, the IRS "issued Notices of Proposed Assessment to the

Members of the [LLC], seeking to assess liability against them . . . under a 'transferee liability

theory,' [and] effectively [seeking] to extend the long-expired statute of limitations."  (Docket 12

¶ 15.)  Plaintiffs originally disputed that the IRS could establish transferee liability; however, the

individual Plaintiffs entered into closing agreements with the IRS to resolve their individual tax

liability for approximately $2 million.  Plaintiffs aver that the closing agreements settled any tax

liability regarding a prior distribution of assets.  (Docket 12 at 6.)  The Government argues that the

closing agreements did not eliminate the remaining tax liability for which it now seeks to attach liability to the LLC itself.

In March 2010, the IRS served several notices of levy to certain companies associated with Plaintiffs "as successor corporation/alter ego/nominee of The Kay Company of: CMD Company, formerly known as The Kay Company." (*Id.* at 6-7.) Also in March 2010, the IRS filed a notice of federal tax lien upon the assets of the LLC. (*Id.* at 7-8.) On March 29, 2010, Plaintiffs filed their complaint, which was later amended on April 9, 2010.

Count One of Plaintiffs' amended complaint alleges that the IRS illegally issued the notices of levy and the notice of lien against them because the applicable statutes of limitations have expired. Plaintiffs request a temporary restraining order to quash the notices and for the court to hold a hearing to consider the issuance of a preliminary injunction. Count Two asks for the same relief as Count One, but alleges that the relief should be granted because: 1) Plaintiffs are not responsible for the liability as a successor, alter ego, or nominee; 2) Plaintiffs no longer are liable due to the closing agreements; and 3) the IRS is estopped from asserting this liability because of misrepresentations made by the IRS to Plaintiffs. Count Three seeks an injunction declaring that Plaintiffs are not liable for the relevant tax liability and precluding the IRS from further attempts to levy upon Plaintiffs' assets for the relevant tax liability. Count Four asserts that the actions of the IRS have resulted in an unlawful taking of Plaintiffs' property. Count Five requests an order from the Court quieting the title of Plaintiffs' property and preventing the IRS from placing additional liens upon Plaintiffs' property regarding the relevant tax liability.

In addition to Plaintiffs' amended complaint, Plaintiffs also filed an Amended Motion for Temporary Restraining Order and for Injunctive and Declaratory Relief [Docket 13]. The motion

asks the Court to grant a temporary restraining order and injunction against the IRS to prohibit the IRS from levying upon the assets of Plaintiffs. Defendant filed a Brief in Opposition to Plaintiff's Amended Motion for a Temporary Restraining Order. (Docket 18.) On April 22, 2010, the Court held a preliminary injunction hearing. Defendant filed a Supplemental Brief in Opposition to Plaintiffs' Amended Motion for a Preliminary Injunction, (Docket 32), to which Plaintiffs responded in their Supplemental Brief in Support of Amended Motion for Injunctive and Declaratory Relief and in Rebuttal of Defendant's Supplemental Brief, (Docket 35).

## II.  APPLICABLE LAW

### A.  Jurisdiction

Plaintiffs assert that jurisdiction is proper pursuant to 26 U.S.C. § 7426 and 28 U.S.C. §§ 1331, 2410, and 1346(a)(1). 28 U.S.C. § 1331 gives original jurisdiction to district courts for civil matters relating to a federal question. District courts also have original jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1). 28 U.S.C. § 2410 states: "the United States may be named as a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter . . . to quiet title to . . . real or personal property on which the United States has or claims a mortgage or lien."

The Government argues that the Court lacks subject matter jurisdiction under 26 U.S.C. § 7421, the Anti-Injunction Act. The Anti-Injunction Act withdraws all courts' jurisdiction over suits filed "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421. The two primary objectives of the Anti-Injunction Act are "[1] to allow the federal government to assess and collect allegedly due taxes without judicial interference and [2] to compel taxpayers to raise

4

their objections to collected taxes in suits for refunds." *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 584 (4th Cir. 1996); *accord South Carolina v. Regan*, 465 U.S. 367, 376 (1984); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974).

Plaintiffs reply that "statutory and judicial exceptions to the Anti-Injunction Act apply in this case." (Docket 35 at 19.) Listed in the Anti-Injunction Act are several exceptions to its application. One such exception provides that district courts have jurisdiction to grant injunctions in respect to collection of taxes where the action is brought by a person other than the taxpayer who claims that the property was wrongfully levied. 26 U.S.C. § 7426.[1] With regard to this case, a levy is wrongful if "[1] the levy is upon property in which the taxpayer had no interest at the time the lien arose or thereafter, or . . . [2] the levy or sale pursuant to levy will or does effectively destroy or otherwise irreparably injure such person's interest in the property which is senior to the Federal tax lien." 26 C.F.R. § 301.7426-1(b); *accord Bregman, Berbert & Schwartz, L.L.C. v. United States*, 145 F.3d 664, 668 (4th Cir. 1998) (citing *Sessler v. United States*, 7 F.3d 1449, 1451 (9th Cir. 1993)). Defendant argues that Plaintiffs do not meet the § 7426 exception because "there is no threat of irreparable harm." (Docket 18 at 18.) Plaintiffs counter that there is the threat of irreparable injury because Plaintiffs will have to fight the IRS in a refund suit.

"Under ordinary circumstances, the availability of a refund suit does negate any claim of irreparable injury." *Estate of Michael v. M.J. Lullo*, 173 F.3d 503, 511 (4th Cir. 1999) (citing *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 762 (1974); *Bob Jones*, 416 U.S. at 746; *Int'l*

-----

[1] 26 U.S.C. § 7426 provides in pertinent part: "If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States."

*Lotto Fund v. Va. State Lottery Dep't*, 20 F.3d at 591 (4th Cir. 1994)).  In *Lullo*, the actions of the IRS were "transparently baseless" because the IRS pursued the matter after the statute of limitations had expired.  173 F.3d at 511.  Under such circumstances, a refund suit is an "inadequate remedy." *Id.*  Plaintiffs believe their situation is similar to the one in *Lullo* because the equities lie in their favor and a refund suit would be pointless.  (Docket 35 at 19.)

The Supreme Court has also recognized an judicial exception to the Anti-Injunction Act. "Only upon proof of the presence of two factors could the literal terms of § 7421(a) be avoided: first, irreparable injury, the essential prerequisite for injunctive relief in any case; and second, certainty of success on the merits."  *Bob Jones*, 416 U.S. at 737 (citing *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1 (1962)).  In analyzing the second factor, courts must determine whether "under the most liberal view of the law and the facts, the United States cannot establish its claim."  *Judicial Watch v. Rossotti*, 317 F.3d 401, 407 (4th Cir. 2003) (quoting *Williams Packing*, 370 U.S. at 7); *see also Lullo*, 173 F.3d at 506 (4th Cir. 1999); *Int'l Lotto Fund*, 20 F.3d at 592 n. 3 (the judicial exception to the Anti-Injunction Act requires that "it be clear that the government 'could in no circumstances ultimately prevail on the merits.'" (quoting *United States v. Am. Friends Serv. Comm.*, 419  U.S. 7 (1974))).

### B.  Preliminary Injunction Standard

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances."  *Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524 (4th Cir. 2003) (citing *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001)) (internal quotation marks omitted).  Such limited circumstances arise when "the party seeking the preliminary injunction must demonstrate by a 'clear showing' that,

6

among other things, it is likely to succeed on the merits at trial." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345-46 (4th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, at 376 (2008)) (citations omitted) , *vacated*, 130 S.Ct. 2371 (Apr. 26, 2010), *reinstated in part*, 607 F.3d 355 (4th Cir. June 8, 2010).  This standard is used "[b]ecause a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial." *Id.* at 345.

To determine whether the issuance of a preliminary injunction is appropriate, the plaintiff must establish four things: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Obama*, 575 F.3d at 346 (citing *Winter*, 129 S.Ct. at 374).  The first requirement, making a clear showing that plaintiff will likely succeed on the merits, is "far stricter" than the previous standard in this circuit, which required that plaintiff demonstrate only a grave or serious question for litigation.  *Obama*, 575 F.3d at 346-47 (citing *Winter*, 129 S.Ct. at 374, 376; *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 195-96 (4th Cir. 1977)).  The second requirement is also stricter than what was required under *Blackwelder*.  If a party makes a strong showing on the probability of success, that party can no longer rely on demonstrating simply a possibility of irreparable injury; the party must make a clear showing that it is likely to be irreparably harmed absent preliminary relief.  *Id.*  As to the fourth requirement, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S.Ct. at 376-77.  All four of the factors must be satisfied.  *Obama*, 575 F.3d at 346 (citing *Winter*, 129 S.Ct. at 374).[2]

---

[2] This is also different than the *Blackwelder* standard, which "allow[ed the four]  requirements to
(continued...)

### III.  DISCUSSION

#### A.  Success on the Merits

Plaintiffs have shown that the Government has been anything but consistent in dealing with the purported liability.  When the IRS initially tried to settle the alleged tax liability, it treated the LLC as an asset by representing to Plaintiffs that the LLC had no assets and that the IRS had no other remedy to collect the alleged tax liability.  This theory was used in negotiating the closing agreements, and is the basis of the settlement.  The Plaintiffs involved in the closing agreements paid what was due under those agreements.  Now, the IRS wants to take a position diametrically opposed to that taken in negotiating the settlement agreements and argue that the LLC has assets because the LLC itself is not an asset, but is really a legal entity that could step into The Kay Company's place as transferor.  Under this new theory, the IRS represents that it now has available remedies to settle the tax liability.  The IRS cannot have it both ways. One of the objectives of using closing agreements is to insure that specific items affecting tax liabilities are treated consistently.  *Bennett v. Comm'r*, 56 T.C.M. 796 (1988) (citing *Phillips v. Comm'r*, 8 T.C. 1286, 1294 (1947)).  If the opportunity to pursue the LLC was there during the time the parties were negotiating the closing agreements, then the IRS should have said so when coming to the final settlements.

Plaintiffs also allege that the closing agreements that were entered into between the IRS and the individual members of The Kay Company settled any tax liability resulting from the sale of The Kay Company.  The Government asserts that these closing agreements did not fully satisfy the tax

---

[2](...continued)
be conditionally redefined as other requirements are more fully satisfied so that 'grant[ing] or deny[ing] a preliminary injunction depends upon a "flexible interplay" among all the factors considered . . . for all four [factors] are intertwined and each affects in degree all the others.'" *Obama*, 575 F.3d at 347.

8

liability, and that the IRS is able to obtain the remaining taxes from the LLC as a nominee, alter-ego, or successor of CMD.

To succeed on the merits, the Plaintiffs have to show that they are not responsible for CMD's remaining tax liability. One of Plaintiffs' arguments states that Plaintiffs are not responsible for this liability because the IRS acted outside of the appropriate statute of limitations; this issue is addressed *infra*. Plaintiffs also argue that the split sale of The Kay Company to the Plaintiff-shareholders and CMD was valid, and that Plaintiffs' tax liability has already been addressed. They argue that this sale did not make them the nominee, alter-ego, or successor of CMD because The Kay Company was solvent when the remaining assets were sold to the trust. Additionally, Plaintiffs argue that the IRS cannot collect the tax liability from them under "transferee" liability because any liability due under this theory was settled in the closing agreements. Plaintiffs state that nearly $2 million was paid in satisfaction of the disputed tax liability under the closing agreements. (Docket 14 at 13.)

In its briefing and at the preliminary injunction hearing, the United States did little to show the Court why Plaintiffs were the nominee, alter-ego, or successor of CMD. The Government has only presented the Court with legal theories, not facts that show why Plaintiffs are liable for the disputed liability. On the other hand, Plaintiffs have submitted a significant amount of evidence and provided reasoning that shows that they are not the nominee, alter-ego, or successor of CMD. (*See, e.g.*, Dockets 12-12, 12-13, and 12-14.)

More persuasively, however, Plaintiffs have presented evidence that shows that any liability attributed to them was settled in the closing agreements. The IRS led Plaintiffs to believe that any liability from the transactions in which stock in The Kay Company was sold would be dealt with in the closing agreements. The letter in which the IRS offered to settle the case uses the total tax

liability owed by CMD in calculating what Plaintiffs paid under the closing agreements. (Docket 12-6 at 6.) The letter did not purport to state that shareholders were only clearing part of the liability, and that the rest would be due by the LLC. Clearly, Plaintiffs reasonably believed that the settlement resolved the matter for good. The closing agreements also support this belief as they purport to resolve the disputed tax liability "with finality." Indeed, this complies with a closing agreement's purpose, which is to avoid litigation and resolve the tax controversy finally and completely. *See, e.g., Shelton v. United States*, Nos. 02-1042 & 04-1595, 2008 WL 4346134 (Fed. Cl. Sept. 23, 2008).

Further, "[a]greements settling tax disputes are contracts to be interpreted under general principles of contract law." *Id.* at *5 (citing *LaRosa's Intern. Fuel Co. Inc. v. United States*, 73 Fed. Cl. 625, 628 (2006)); *see also Cinema '84 v. Comm'r* , 294 F.3d 432, 445 (2d Cir. 2002) (citing *Goldman v. Comm'r*, 39 F.3d 402, 405 (2d Cir. 1994); *Roach v. United States*, 106 F.3d 720, 723 (6th Cir. 1997)). Under contract law, generally only the parties to an agreement are bound. The Government argues that because the LLC was not a party to the closing agreements, the LLC cannot bind the government to the premises underlying those agreements. However, the LLC did not have the ability to be a party to the closing agreements, because under the agreements, the LLC was treated as an asset, not an entity capable of entering into a contract. The Government's position does not carry out the purpose behind closing agreements, insuring consistent treatment of specific items affecting tax liability. *Bennett v. Comm'r*, 56 T.C.M. 796. Therefore, Plaintiffs are likely to succeed on the merits because they can demonstrate that they are not responsible for the tax liability because it was already satisfied, or at least fully and finally compromised, in the closing agreements.

Because Plaintiffs have shown that they are not responsible for the remaining tax liability, it is clear that the Government will not ultimately prevail on the merits.[3]

### B. Irreparable Harm

Typically, courts refuse to find irreparable harm when the harm suffered may be compensated by an award of money damages. However, "extraordinary circumstances may give rise to the irreparable harm required for a preliminary injunction." *Hughes Network Sys., Inc. v. InterDigital Comms. Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) ("even where a harm could be remedied by money damages at judgment, irreparable harm may still exist where the moving party's business cannot survive absent a preliminary injunction or where 'damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected'")). Plaintiffs have demonstrated that they are likely to suffer irreparable harm in the absence of injunctive relief. Plaintiffs argue that "the IRS cannot bring baseless claims for taxes only to force the taxpayer into a refund suit." (Docket 35 at 17 (citing *Lullo*, 173 F.3d 503).) As discussed above, Plaintiffs are likely to succeed on the merits, and should not be forced to pay the taxes alleged by the Government then go back to court with a refund suit. The IRS previously agreed that the taxes were satisfied; Plaintiffs should not suffer continuous worry about whether the IRS will rehash this tax liability when both sides have gone through a long settlement process to reach an agreement. Additionally, to settle the alleged liability, the LLC would have to be sold. Plaintiffs would lose income that would go toward fighting a refund suit, family business property would be lost, and it would be impossible to rebuild Plaintiffs' established business. Thus, this situation is an

---

[3] The Court's finding that it is clear there are no circumstances where the Government will ultimately prevail prevents the application of the Anti-Injunction Act. Thus, jurisdiction in this Court is proper. *Bob Jones*, 416 U.S. 725.

"extraordinary circumstance" where money damages are insufficient and Plaintiff is likely to suffer irreparable harm in the absence of preliminary injunctive relief.[4]

    *C. Balance of Equities and Public Policy*

The Government's varying positions in this case and in the treatment of the nature of the transactions involved tips the balance of equities in Plaintiffs' favor.  Granting the injunctive relief that Plaintiffs request will do little to harm the Government.  As it seems that Plaintiffs have settled the tax liability at issue, Plaintiffs should be able to continue running their business unencumbered.  Further, the purpose of  a closing agreement is to settle a tax liability with finality and avoid the trouble and expense of litigation for both the taxpayer and the Government.  Here, the Government purportedly compromised with Plaintiffs, entered into closing agreements, then came back and caught Plaintiffs off guard by asking Plaintiffs to deal again with a tax debt Plaintiffs thought was settled with finality.

An injunction is in the public's interest in this matter because it supports the use of closing agreements and the purpose of settling tax liability with finality.

*IV.  STATUTE OF LIMITATIONS*

Plaintiffs assert that the IRS has acted outside of the statute of limitations when it issued the notices of levy and the notice of lien on Plaintiffs' property.  First, Plaintiffs believe that under 26 U.S.C. § 6501, "the IRS was required to make any assessment of unpaid taxes within three years of [the] date of the filing of the 2001 Return."  (Docket 14 at 10.)  Section 6501 provides in pertinent

---

[4] This finding of irreparable harm also comports with the Court's finding that jurisdiction is proper in this Court because the Anti-Injunction Act does not apply.  *Lullo*, 173 F.3d 503.  *See also* 26 U.S.C. § 7426.

part: "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed."[5]   However:

> If the taxpayer omits from gross income an amount properly includible therein and . . . such amount is in excess of 25 percent of the amount of gross income stated in the return . . . the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.

26 U.S.C. § 6501(e).  Gross income is defined as "the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services."  *Id.*  The Government believes that this six-year limitations period applies.  (Docket 18 at 12.)[6]

If a tax assessment is made within the applicable statute of limitations, then the tax can be collected by a levy or a court proceeding.  26 U.S.C. § 6502.  However, the tax can only be collected within ten years after the assessment.[7]  *Id.*  Whatever the length of the statute of limitations, three years or six years, the statute is tolled for 150 days after a notice of deficiency is mailed.  26 U.S.C. §§ 6503 and 6213.[8]  Thus, the statute of limitations is extended when a notice of deficiency is issued.

---

[5] Section 6501(c) contains exceptions for the three-year statute of limitations: filing a false return, willful attempt to evade tax, failure to file a return, and an extension of the time by agreement.

[6] The Government's assertion of the six-year limitation period stems from the IRS transferee report sent to John F. Kay Jr. as a "transferee of the assets of CMD company fka The Kay Company." (Docket 12-4 at 1.)  The transferee report states: "The omitted income exceeded 25% of the income reported on the return.  Therefore, IRC § 6501(e) applies to establish the statute of limitations for assessing income tax for the income return of Kay Co for the period ended 10/26/2000."  (Docket 12-5 at 21.)

[7] Of course, there are exceptions to this ten-year limitations period as well.  If there is an installment agreement, the levy or court proceeding must occur within 90 days of the date agreed in the installment agreement.  If there is a release of levy under § 6343, then the levy or court proceeding must occur prior to the written expiration date agreed upon in the release.  26 U.S.C. § 6502.

[8] Section 6503(a)(1) states:

(continued...)

However, the giving of such notice after the limitations period has fully run does not remove the limitations bar. *See, e.g., Comm'r v. S. Frieder & Sons Co.*, 247 F.2d 834 (3d Cir. 1957). Accordingly, if the statute of limitations has already expired, then the statute of limitations cannot be extended for the 150 days after a notice of deficiency is mailed.

The Government argues that Plaintiffs are not permitted to make a statute of limitations argument because Plaintiffs cannot "challenge the underlying assessment made against KC/CMDC."[9]  The Government reasons that the underlying tax liability cannot be challenged with an action to quiet title pursuant to 28 U.S.C. § 2410 or a wrongful levy action pursuant 26 U.S.C. § 7426.  (Docket 18 at 12.)[10]

The Government argues that if Plaintiffs are able to challenge the tax liability, then they would be unsuccessful because the IRS made the assessment in the appropriate time frame, which

---

[8] (...continued)

> The running of the period of limitations provided in section 6501 or 6502 . . . on the making of assessments or the collection by levy or a proceeding in court, in respect of any deficiency as defined in section 6211 . . . shall . . . be suspended for the period during which the Secretary is prohibited from making assessment or from collecting by levy or a proceeding in court . . . and for 60 days thereafter.

In addition, section 6213 states:

> Within 90 days . . . after the notice of deficiency authorized in section 6212 is mailed . . . the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency.  [N]o assessment of a deficiency in respect of any tax imposed . . . and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of [the] 90-day . . . period."

[9] On its face, a challenge to the statute of limitations may not seem like a challenge to the underlying tax liability.  However, a taxpayer's claim that the limitations period has expired does constitute a challenge to the underlying tax liability.  *See, e.g., Hoffman v. Comm'r*, 119 T.C. 140, 145 (2002).

[10] "A suit under 28 U.S.C. § 2410 is proper only to contest the procedural regularity of a lien; it may not be used to challenge the underlying tax liability."  *Pollack v. United States*, 819 F.2d 144 (6th Cir. 1987) (citations omitted).

14

they believe is six years from the time of the initial filing plus 150 days.  (Docket 18 at 12.)  The Government states that the IRS received the return on March 12, 2001, a notice of deficiency was issued on March 5, 2007, and the assessment was made on August 3, 2007.  (*Id.*)[11]

Plaintiffs assert that the applicable statute of limitations is three years.  (Docket 14 at 10.)  Also, Plaintiffs argue that the IRS must prove that this statute of limitations does not apply.  (Docket 14 at 11 (citing 26 U.S.C. §§ 6501 and 7454).)

On March 12, 2001, the subject tax return was filed and the statute of limitations for an assessment began to run.  The Government asserts that a notice of deficiency was issued to Plaintiffs on March 5, 2007.  However, Plaintiffs argue that this notice of deficiency was to CMD, not Plaintiffs; thus, the notice was invalid and any six-year "material omission" statute of limitations ended on March 12, 2007.  On August 3, 2007, the IRS issued an assessment.  The Government argues that this was within the six years plus 150 days time limit; Plaintiffs argue that the statute of limitations had already run, and if it was within the statute of limitations, the assessment was improper because it was against CMD, not Plaintiffs.  The Government counters that the notice of deficiency did not have to be made to Plaintiffs because "[t]he LLC is the alleged, nominee, alter-ego, or successor of the taxpayer" and the notice of deficiency issued CMD was enough.  (Docket 63 at 6.)

To decide whether the three-year, six-year, or some other statute of limitations period applies, the Court needs more facts relating to the subject return, whether the IRS properly regarded it as having an omission of 25 percent of gross income under § 6501(e), and whether Plaintiffs are actually liable

---

[11] The Government originally stated that the notice of deficiency was mailed on March 12, 2007.  However, the Government later notified the Court that the actual date was March 5, 2007.  (Docket 63 at 13 n. 8.)

for the liability that the IRS claims is owed.  These issues need not be settled at the time of entering a preliminary injunction order, and thus will be developed more as discovery progresses.  There is no dispute between the parties regarding the dates relating to the relevant returns, assessments, and notices, and the Court is able to ascertain these dates through the record.  However, as Plaintiffs argue that the statute of limitations does not apply to them because the assessment was made against CMD and not Plaintiffs, the issue of whether or not there was an omission has not been fully addressed.  Therefore, the Court cannot make a decision on the length of the statute of limitations at this time, and this issue should be addressed in any dispositive motions filed and accompanying memoranda.

*IV.  CONCLUSION*

For the reasons set forth above, Plaintiffs' Amended Motion for Temporary Restraining Order and for Injunctive and Declaratory Relief [Docket 13] is **GRANTED**.  Furthermore, the Court **DENIES AS MOOT** Plaintiff's Motion for Temporary Restraining Order and for Injunctive Relief [Docket 2].  A separate Preliminary Injunction Order will enter this day implementing the rulings contained within.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 3, 2011

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

16